UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JUSTIN DUANE HOWARD,

                Petitioner,

v.

BRYAN MORRISON,

                Respondent.

_____/

Case No. 1:23-cv-383

Honorable Phillip J. Green

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 3.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases.  The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings.  "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding— the petitioner.  Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not

parties to th[e] action at the time the magistrate entered judgment.").[1]  Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

## I.    Request to Appoint Counsel

Petitioner Justin Duane Howard asks the Court to appoint counsel.  (Pet., ECF No. 1, PageID.10.)  Indigent habeas petitioners have no constitutional right to a court-appointed attorney.  *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires.  Rule 8(c), Rules Governing Section 2254 Cases.

The Court has considered the complexity of the issues and the procedural posture of the case.  At this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position.  Petitioner's motion for a court-appointed attorney will therefore be denied.

## II.    Factual Allegations

Petitioner is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.  Following a jury trial in the Calhoun County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529; first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2); and felonious assault, in violation of Mich. Comp. Laws § 750.82.  On May 16, 2014, the court sentenced Petitioner as a second offense habitual offender, pursuant to Mich. Comp. Laws § 769.10, to 30 to 60 years' incarceration for armed robbery; 10 to 30 years'

incarceration for first-degree home invasion, and 3 to 6 years' incarceration for felonious assault.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> In the early morning hours of October 27, 2012, [Petitioner] and Kenneth Skidmore broke into Pearlie Parker's home in Battle Creek, Michigan. Although Parker did not personally know [Petitioner], at the time of the home invasion, Parker lived with a man named Shonder Sander, who had known [Petitioner] for approximately 20 years. [Petitioner], who is a plumber, went to Parker's home a day or two before the home invasion to look at the home's plumbing.
>
> On the night of the home invasion, Parker was in the home when she saw two men wearing ski masks running up the driveway. She called the police, but before police arrived, the men entered the home. Parker ripped the ski mask off of one of the men, and she recognized him as [Petitioner], the man who had recently been in the home looking at the plumbing. Parker was struck in the face with a gun, which caused her to bleed, and she was asked "where's the money?" Parker gave the men a large sum of cash, including $4,000 Sanders had in the house from the recent sale of his car. At some point, Parker heard police sirens, at which point [Petitioner] and Skidmore ran out of the house.
>
> Police responding to the scene saw two men walking down the street, within 100 to 150 feet of Parker's house. After speaking with Parker, police began a canine search for the men and set up a perimeter in the area. Police found a gun and a pair of gloves nearby, and a police officer stopped [Petitioner] and Skidmore, who were walking in the area and who fit Parker's description of the suspects. Police ran [Petitioner] and Skidmore through the Law Enforcement Information Network (LEIN), and discovered that they both had outstanding warrants. Parker was then transported to [Petitioner's] location for a show-up, at which time she positively identified [Petitioner] and she indicated that she recognized Skidmore as well based on his jeans.
>
> At trial, the prosecution presented DNA evidence from the gloves found by the police, which established that Parker's blood was on the outside of the gloves and Skidmore's DNA had been found on a sample taken from inside the gloves. Parker also identified [Petitioner] at trial as one of the men who broke into her home. [Petitioner] testified in his own defense, claiming that he had been walking alone that evening, on his

> way to buy cigars, when Skidmore, a man whom [Petitioner] had known
> as a teenager, came out of a side street and spoke to [Petitioner].

*People v. Howard*, No. 322868, 2015 WL 7283436, at *1 (Mich. Ct. App. Nov. 17, 2015).

On appeal, Petitioner alleged that he was denied his right to a speedy trial, that the prosecution violated the 180-day rule set forth in Mich. Comp. Laws §§ 780.131 and 780.133, and that the trial court erred by denying his motion to suppress evidence of the victim's on-scene identification and for a *Wade*[2] hearing. *Id.* at *2–6. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on November 17, 2015. *Id.* at *1. Initially, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. Howard*, 878 N.W.2d 861 (Mich. 2016). However, on September 6, 2016, the supreme court granted Petitioner's motion for reconsideration and remanded the matter to the trial court "to determine whether the court would have imposed a materially different sentence under the

---

[2] *United States v. Wade*, 388 U.S. 218 (1967). In *Wade*, the Supreme Court considered whether a post-indictment lineup for identification purposes constituted a critical stage of criminal proceedings such that the defendant's Sixth Amendment rights were violated by the absence of counsel. *Wade*, 388 U.S. at 223–25. The Court concluded that a pretrial identification lineup is a critical stage of proceedings but rejected a *per se* exclusionary rule barring the admission of such identification. *Id.* at 232–34, 240. Instead, the Court instructed that trial courts conduct a hearing to consider several factors, including:

> [1] the prior opportunity to observe the alleged criminal act, [2] the existence of any discrepancy between any pre-lineup description and the defendant's actual description, [3] any identification prior to lineup of another person, [4] the identification by picture of the defendant prior to the lineup, [5] failure to identify the defendant on a prior occasion, and [6] the lapse of time between the alleged act and the lineup identification.

*Id.* at 240.

sentencing procedure described in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015)."[3]  *People v. Howard*, 884 N.W.2d 284 (Mich. 2016).

On September 13, 2016, the trial court denied resentencing "under the judicial posture that it would not impose a material different sentence."  (Pet., ECF No. 1, PageID.3.)  Petitioner appealed that decision.  The court of appeals concluded that the trial court had erred by not providing Petitioner an opportunity to appear before the court and be heard because the original sentencing judge was unavailable and a new judge had been assigned to Petitioner's case.  *See People v. Howard*, 916 N.W.2d 654, 661–62 (Mich. Ct. App. 2018).  The court of appeals vacated Petitioner's sentence and remanded the matter to the trial court for further proceedings.  *Id.*

On remand, the trial court reimposed the original sentence on Petitioner.  Petitioner again appealed, and the court of appeals affirmed his convictions and sentences.  *See People v. Howard*, No. 343819, 2019 WL 3436562, at *1 (Mich. Ct. App. July 30, 2019).  The Michigan Supreme Court denied Petitioner's application for leave to appeal on March 3, 2020.  *See People v. Howard*, 939 N.W.2d 266 (Mich. 2020).

Petitioner subsequently filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500 on August 17, 2020.  (Calhoun Cnty. Cir. Ct. Order, ECF No. 1-1, PageID.36.)  Petitioner raised the following grounds for relief: (1) violations of his Sixth and Fourteenth Amendment rights "because his former prosecuting

---

[3] In *Lockridge*, the Michigan Supreme Court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional and, therefore, made the guidelines advisory only. *See Lockridge*, 878 N.W.2d at 520–21.

attorney is now sitting as the sole arbiter over his post-conviction proceedings" (*id.*);
(2) violations of his Fourteenth Amendment rights because the prosecution "used
knowingly false and/or perjurious identification testimony to unlawfully obtain a
conviction" (*id.*); (3) violations of his Fourteenth Amendment rights because his
sentence was based upon criminal conduct not related to him (*id.*, PageID.37); (4) the
prosecution unlawfully engaged in plea bargaining regarding felony firearm charges
despite withholding DNA reports "scientifically excluding [Petitioner] of such
charges" (*id.*); and (5) cumulative error (*id.*). The trial court denied his petition on
May 28, 2021. (*Id.*, PageID.36–37.) The court of appeals and supreme court denied
Petitioner's applications for leave to appeal on January 14, 2022, and May 31, 2022,
respectively. (Mich. Ct. App. Order, ECF No. 1-1, PageID.35; Mich. Order, ECF No.
1-1, PageID.34.)

On April 14, 2023, Petitioner filed his habeas corpus petition raising three
grounds for relief, as follows:

I.    Was the decision rendered by the state courts of Michigan
      contrary to and resulted in an unreasonable application of clearly
      established federal law where Petitioner was deprived of his Sixth
      and Fourteenth Amendment rights to an unbiased judge, where
      the judge was the former prosecutor who presided over the post-
      conviction proceedings[?]

II.   Did the state courts of Michigan apply an unreasonable
      application of clearly established federal law where Petitioner
      was denied his Fourteenth Amendment right when the state
      court allowed false evidence and perjured misidentification
      testimony to unlawfully obtain the within conviction[?]

III.  Did the state appellate court apply a contrary, unreasonable
      application of clearly established law where Petitioner was denied
      his Sixth Amendment right to the effective assistance of counsel
      for not challenging the perjury used to identify Petitioner where

two other persons were identified as the person who robbed the victim[?]

(Pet., ECF No. 1, PageID.8.)

## III.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.

*Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of

a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*. *Id*.  (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.   Discussion

### A.    Ground I—Judicial Bias

As his first ground for relief, Petitioner contends that his Sixth and Fourteenth Amendment rights were violated because he was deprived of "an unbiased judge, where the judge was the former prosecutor who presided over the post-conviction proceedings."  (Pet., ECF No. 1, PageID.8.)  Specifically, Petitioner avers that when his case was remanded for resentencing, it was initially assigned to Judge Lincoln, who was the actual prosecutor during Petitioner's criminal proceedings.  (*Id.*, PageID.14.)  Judge Lincoln recused herself for that reason.  (*Id.*)  The case was then assigned to Judge Hallacy, who "made it clear that he was not going to impose a different sentence."  (*Id.*, PageID.15.)  Petitioner contends that Judge Hallacy "not only denied a motion for relief from judgment claiming the issues [were] meritless, he failed to comply with the State Court Rules when denying the motion."  (*Id.*)  Petitioner avers that it is "beyond any doubt that Judge Hallacy displayed judicial bias[] when adjudicating Petitioner's post[-]conviction motion for resentencing. It is also beyond [doubt] that Judge Hallacy knew about the Petitioner's criminal past and used it against him while deciding his post[-]conviction motion."  (*Id.*, PageID.16.)  He bases his argument on the fact that Judge Hallacy "was a former Calhoun County

Prosecutor[] who prosecuted Petitioner over 11 times, including [regarding a] habitual offender status." (*Id.*, PageID.14.)

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997) (citations omitted). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 9 (2016) (internal quotation marks omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 579 U.S. at 8. The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). As the Sixth Circuit has noted:

> The presumption of impartiality stems not merely from the judicial-bias
> caselaw, *see* [*Withrow*], but from the more generally applicable
> presumption that judges know the law and apply it in making their
> decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and
> the even more generally applicable presumption of regularity, *see Parke
> v. Raley*, 506 U.S. 20, 30–31 (1992); *United States v. Chem. Found., Inc.*,
> 272 U.S. 1, 14–15 (1926).

*Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

In *Liteky v. United States*, 510 U.S. 540 (1994),[4] the Supreme Court described

the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a
> bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S.
> [563, 583 (1966)]. In and of themselves (*i.e.*, apart from surrounding
> comments or accompanying opinion), they cannot possibly show reliance
> upon an extrajudicial source; and can only in the rarest circumstances
> evidence the degree of favoritism or antagonism required (as discussed
> below) when no extrajudicial source is involved. Almost invariably, they
> are proper grounds for appeal, not for recusal. Second, opinions formed
> by the judge on the basis of facts introduced or events occurring in the
> course of the current proceedings, or of prior proceedings, do not
> constitute a basis for a bias or partiality motion unless they display a
> deep-seated favoritism or antagonism that would make fair judgment
> impossible. Thus, judicial remarks during the course of a trial that are
> critical or disapproving of, or even hostile to, counsel, the parties, or
> their cases, ordinarily do not support a bias or partiality challenge. They
> *may* do so if they reveal an opinion that derives from an extrajudicial
> source; and they *will* do so if they reveal such a high degree of favoritism
> or antagonism as to make fair judgment impossible. An example of the
> latter (and perhaps of the former as well) is the statement that was
> alleged to have been made by the District Judge in *Berger v. United
> States*, 255 U.S. 22 (1921), a World War I espionage case against
> German-American defendants: "One must have a very judicial mind,
> indeed, not [to be] prejudiced against the German Americans" because
> their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation

---

[4] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The
Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing
judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386
(6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–556 (emphasis in original).

Petitioner asserted his claim of judicial bias in his motion for relief from judgment. The trial court summarily rejected his claim, stating: "Disqualification of a Judge is covered by MCR 6.002. 'Actual Bias' is required for a judge to be disqualified. *Cain v. Department of Corrections*, 451 Mich 470 1996. In this matter no actual prejudice has been shown. Therefore, the argument fails." (Calhoun Cnty. Cir. Ct. Order, ECF No. 1-1, PageID.36.) The trial court's rejection of Petitioner's bias argument focused on the issue as a matter of state law, looking to state authority. "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, any part of the trial court's determination that is based on state law is axiomatically correct.

But in this instance, the state court's application of *Cain* is, in effect, an application of *Liteky*, as well as *Withrow v. Larkin*, 421 U.S. 35 (1975), *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), and *Johnson v. Mississippi*, 403 U.S. 212 (1971),

because the Michigan Supreme Court turned to that clearly established federal law to determine the indicia of actual bias that might warrant disqualification. *Cain*, 548 N.W.2d at 494–502.  Put differently, by relying on *Cain*, the state court in Petitioner's case relied on clearly established federal law to determine that no unconstitutional bias impacted Petitioner's sentence.

The indicia of bias identified by Petitioner was Judge Hallacy's prior prosecution of Petitioner in other criminal cases—not the criminal case that resulted in the convictions and sentences he now attacks with this petition.  The circumstances that Petitioner describes do not fit clearly within the three situations that the *Liteky* Court set forth that bear objective indicia of bias.  Moreover, although the Supreme Court has recognized constitutionally impermissible bias in cases where the judge had prior involvement in the same case as a prosecutor, *Williams*, 579 U.S. at 8, Petitioner has not identified any clearly established federal law that suggests that prior participation as a prosecutor in other cases provides the objective indicia of actual bias that violates due process.  Therefore, Petitioner has failed to demonstrate that the trial court's determination regarding any purported bias is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to relief on habeas ground I.

### B.    Ground II—Perjury and False Testimony

As his second ground for relief, Petitioner contends that his Fourteenth Amendment due process rights were violated because the state "allowed false evidence and perjured misidentification testimony to unlawfully obtain the within conviction." (Pet., ECF No. 1, PageID.17.)  Specifically, Petitioner contends that at

16

trial, "the identification of Petitioner alleged to be the person who robbed the complainant came from the victim who identified someone else as the perpetrator." (*Id.*, PageID.18.)  According to Petitioner, the prosecution "presented its case to the jury while knowing that Ms. Parker, Mr. Sanders[,] and Officer Olsen were testifying falsely to the identification of Petitioner."  (*Id.*, PageID.20.)  At trial, Ms. Parker testified that she pulled Petitioner's mask off, despite previously stating that she pulled the mask from either Mills or Skidmore.  (*Id.*)  Petitioner contends that the prosecution "failed to correct this information" and relied upon false testimony to obtain Petitioner's conviction.  (*Id.*, PageID.20–22.)

The Fourteenth Amendment's right to due process prohibits a state from knowingly and deliberately using perjured evidence to obtain a conviction.  *See Napue v. Illinois*, 360 U.S. 264, 260 (1959).  The Supreme Court repeatedly has recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  Presentation of perjured testimony, without more, however, does not rise to the level of a constitutional violation.  *See Briscoe v. LaHue*, 460 U.S. 325, 327 (1983).  Rather,

> [t]he knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere

inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).

The court of appeals summarized the testimony with which Petitioner takes issue in its opinion addressing Petitioner's first appeal. As the court of appeals noted, Ms. Parker was able to see Petitioner's face when she pulled up his mask. *Howard*, 2015 WL 7283436, at *6. "There was light from the television and the fish tank, and Parker had a considerable amount of time to observe [Petitioner] at the time of the crime." *Id.* Parker recognized Petitioner "from a previous encounter when he came to her home to fix the plumbing. Moreover, the identification was made without hesitation, and the victim was adamant about her identification." *Id.*

Petitioner raised this ground for relief in his motion for relief from judgment, and the trial court summarily dismissed it, stating: "This is not a legal argument, but merely [Petitioner's] interpretation of the evidence against him. It has no merit." (ECF No. 1-1, PageID.36–37.) The summary rejection of Petitioner's claim, however, does not render the analysis an unreasonable application of, or make it contrary to, clearly established federal law. Petitioner fails to establish that the testimony offered by Ms. Parker at trial, particularly her testimony identifying Petitioner as the individual from whom she pulled the mask, was false. Simply pointing out the inconsistencies between Ms. Parker's statements regarding identification of the perpetrators does not suffice to show perjury. *See Lochmondy*, 890 F.2d at 822. Moreover, Petitioner offers nothing from which the Court could conclude that the prosecution knowingly offered perjured testimony. Furthermore, Petitioner himself

acknowledges that the inconsistencies between Ms. Parker's prior statements and her testimony at trial were made known to the jury.  (Pet., ECF No. 1, PageID.18, 20, 25–26.)  Petitioner, therefore, is not entitled to relief on habeas ground II.

### C.    Ground III—Ineffective Assistance of Counsel

As his final ground for relief, Petitioner contends that trial counsel rendered ineffective assistance because he failed to challenge the "perjury used to identify Petitioner where two other persons were identified as the person who robbed the victim." (Pet., ECF No. 1, PageID.23.)  The Court will address Petitioner's claim as he has raised it.  The issue as Petitioner presents it is whether counsel addressed the "perjury" of witness Parker.[5]

As an initial matter, Petitioner contends that the Michigan Court of Appeals "addressed and ruled on this claim in the first appeal of right." (*Id.*, PageID.23.)  A review of the court of appeals' decision, however, indicates that Petitioner is mistaken.  In his first appeal, Petitioner argued that the trial court "clearly erred by denying [his] motion to suppress evidence of Parker's on-the-scene identification and

---

[5] That is an entirely different focus than whether the jury was made aware that Parker identified other individuals as the person whose ski mask she pulled up during the robbery. Petitioner specifically reports, with citation to the record, that "Ms. Parker identified Kenneth Skidmore as the man she pulled the ski mask up while talking to the police officer at the scene. She later identified a man name[d] Jon Mills as the man she pulled the ski mask up when talking to her neighbor, and said he was the man who robbe[d] her." (Pet., ECF No. 1, PageID.12, n.1 (citing Trial Transcript II, pp. 50-51.).) Nonetheless, Ms. Parker went on to "tell[ the] jury that she [was] positive that the man she pulled the ski mask off was Petitioner Howard." (*Id.* (citing Trial Transcript II, p. 60.).) Indeed, Petitioner reports that the prosecutor specifically addressed Ms. Parker's confusion "as to whom she took the mask off." (*Id.* PageID.26 (citing Trial Transcript III, p. 56).)

for a *Wade* hearing." *Howard*, 2015 WL 7283436, at *4.  Petitioner at no time raised an ineffective assistance of counsel claim premised upon counsel's failure to challenge Ms. Parker's "perjury."  Petitioner's third ground for relief is, therefore, unexhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 848 (1999); *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

The Court may not grant habeas relief on a claim if Petitioner has not exhausted his state court remedies.  *See* 28 U.S.C. § 2254(b)(1)(A).  A habeas corpus petition, however, "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  *See* 28 U.S.C. § 2254(b)(2).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135

(6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

As Petitioner has raised this ineffective assistance claim, it fails at the outset because Petitioner has not demonstrated that Ms. Parker committed perjury. He has identified only inconsistencies—inconsistencies that, according to Petitioner's own account, *see supra* note 5, were already before the jury.

Under those circumstances, Petitioner has failed to show that counsel's failure to raise Parker's perjury was professionally unreasonable because the claim would have been meritless. Moreover, because the "perjury" attack would have been meritless, Petitioner cannot show prejudice. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Petitioner, therefore, has not satisfied the *Strickland* standard and is not entitled to relief on habeas ground III.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

22

## <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying

Petitioner's request to appoint counsel and denying a certificate of appealability.


Dated:  <u>May 15, 2023</u>          <u>/s/ Phillip J. Green</u>
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge